**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| ELIZABETH H. COOMES, ) | Case No. 17-13497-BFK |
| ) | Chapter 13 |
| Debtor. ) | |

**ORDER GRANTING TRUSTEE'S MOTION**
**TO DISMISS BANKRUPTCY CASE**
**WITH PREJUDICE**

This matter is before the Court on the Chapter 13 Trustee's Motion to Dismiss this bankruptcy case with prejudice. Docket No. 43. The Debtor filed an Opposition to the Trustee's Motion. Docket No. 60. The Court heard the evidence on June 6, 2018. For the reasons stated below, the Court will dismiss this bankruptcy case with prejudice for a period of 180 days.

**Findings of Fact**

This is the Debtor's fourth Chapter 13 case since 2012, plus a related corporate Chapter 11 case filed in March 2018. The Court will recount the procedural history of the Debtor's bankruptcy cases, below.

*A. The Debtor.*

1. The Debtor is an individual residing in Leesburg, Virginia. She has been employed as an insurance agent over the years. She owns an insurance agency known as Old Town Insurance & Financial Services, Inc. ("Old Town").

2. The Debtor owns four properties: her home at 201 Cornwall St. NW, in Leesburg, a 5-bedroom vacation rental property in Bayse, Virginia (which is located within the Bryce Resort in Shenandoah County), and two unimproved lots also within Bryce ("the Bryce Lots").

3. The Cornwall Street property is encumbered by one mortgage. The Bayse property has two mortgages.[1]

4. The Debtor has suffered a series of setbacks over the years. First, she asserts that the heating and air conditioning apparatus in her office was improperly connected, resulting in sewer gas being inducted into the office. She asserts that she has suffered chronic respiratory conditions as a result. She has a lawsuit pending in the Circuit Court of Fauquier County against the owner of the property and the property manager, in which she is represented by counsel. She testified that she has spent "six figures" for expert witnesses and other out-of-pocket costs for the lawsuit. The case is not currently set for a trial.

5. Second, the Debtor voluntarily surrendered her insurance license in Virginia. This happened after Anthem Blue Cross Blue Shield of Virginia (BCBS) sent a number of commission checks to the Debtor in error. BCBS demanded immediate repayment of the commissions. When the Debtor was unable to repay the amounts immediately, BCBS filed a complaint with the Virginia Insurance Commissioner in September 2012. The Debtor voluntarily surrendered her license while these charges were pending.

6. In 2013, the State of Maryland then instituted reciprocal proceedings, alleging that the Debtor's failure to self-report the voluntary surrender of her license in Virginia was a

---

[1] The nature and amount of the Debtor's mortgages on her properties is the source of some confusion for the Court. In her 2012 Chapter 13 case, the Debtor listed two mortgages against her principal residence at Cornwall St. (Chase Bank in the amount of $522,857.00, and Wells Fargo in the amount of $113,849.28), and three mortgages against the Basye property (CitiMortgage in the amount of $196,000.00, Wells Fargo in the amount of $100,175.49, and Middleburg Bank in the amount of $64,000.00). Case No. 12-15441, Docket No. 1, Schedule D. In this case, the Debtor listed only one mortgage against Cornwall St. (Bank of New York Mellon in the amount of $605,000.00), and two mortgages against the Bayse property (Nationstar in the amount of $237,528.00 and Middleburg Bank in the amount of $67,000.00). It is unclear what became either of the $113,849.28 debt previously secured by the second mortgage on Cornwall St. and the $100,175.49 debt secured by the second mortgage against the Bayse property. It is possible that the debt on Cornwall St. was rolled into the first mortgage, now held by Bank of New York Mellon, and the debt against the Bayse property was released. In the end, the confusion is not material to the Court's decision as set forth below.

violation of the insurance regulations in Maryland. The Debtor takes the position that the voluntary surrender of her license was not an "adverse action" within the meaning of the Maryland Insurance Code and that the Maryland Insurance Commission lacks jurisdiction over acts that occurred in Virginia.

7. The Debtor has asserted in this case that the Maryland Insurance Administration violated the automatic stay by moving to dismiss (successfully) her appeal of the revocation of her license. *See* Docket No. 80, Motion to Enforce Automatic Stay. The Maryland Insurance Administration responded to the Debtor's Motion, arguing that it was entitled to move to dismiss her appeal pursuant to Bankruptcy Code Section 362(b)(4) (the police and regulatory power exception to the automatic stay). Docket No. 90, at 6 ("This provision [Section 362(b)(4)] has been uniformly interpreted to except from the automatic stay provisions of the Bankruptcy Code actions such as the one brought by the Administration in this case.")

B. *Case No. 10-17530-SSM (Eastern District of Virginia).*

8. On September 6, 2010, Ms. Coomes and her husband filed a Voluntary Petition under Chapter 7 with this Court. Case No. 10-17530-SSM, Docket No. 1.

9. She received a discharge in December 2010, and the case was closed. Docket Nos. 22, 24.

C. *Case No. 12-15441-BFK (Eastern District of Virginia).*

10. On September 7, 2012, Ms. Coomes filed a Voluntary Petition under Chapter 13 with this Court. Case No. 12-15441-BFK Docket No. 1.

11. In her Petition, she listed 210 Cornwall St., NW, Leesburg, VA, as her residence. *Id.* She stated in her Schedules that the Cornwall Street property had a value of $358,873.00, with mortgages totaling $636,706.28. *Id.,* Schedule A, at 21.[2]

12. The Debtor listed the Bayse property with a value of $175,000.00 and secured debt of $360,175.49. *Id.*

13. Shortly after she filed her Chapter 13 petition, Ms. Coomes filed adversary proceedings against Wells Fargo Bank, N.A. and Middleburg Bank. Adversary Proceedings Nos. 12-01423-BFK and 12-01424-BFK.

14. In the Wells Fargo adversary proceeding, Ms. Coomes was successful in obtaining a default judgment against Wells Fargo which stripped off a wholly unsecured second deeds of trust lien against her residence in Leesburg, Virginia, and a wholly unsecured lien against her rental property in Bayse, Virginia. Adversary Proceeding No. 12-01423-BFK, Docket No. 20.

15. The Middleburg Bank adversary proceeding concluded with a Consent Order, also stripping off a wholly unsecured deed of trust lien against the Debtor's rental property in Bayse, subject to the successful completion of a confirmed Chapter 13 plan. Adversary Proceeding No. 12-01424-BFK, Docket No. 16.

16. As in all strip-off adversary proceedings in Chapter 13, the strip off of these liens was subject to the successful completion of a confirmed Chapter 13 Plan. 11 U.S.C. §§ 348(f)(1)(C) (effect of conversion), 349(b)(1)(C) (effect of dismissal).

---

[2] The Debtor has filed a lawsuit in State court against the lender on her residence, claiming that the lender has unfairly denied her a loan modification. It does not appear that this lawsuit will be resolved any time soon.

17. The Debtor filed an Amended Chapter 13 Plan on February 13, 2013. Docket No. 58. In her Amended Plan, the Debtor stated the amount of the arrearages on her principal residence as **$16,064.56,** and the arrearages on her rental property at **$17,273.07.** *Id.,* ¶ 5(A).

18. The Court entered an Order confirming the Debtor's Chapter 13 Plan on March 29, 2013. Docket No. 66.

19. In March 2015, JP Morgan Chase Bank N.A. ("JP Morgan Chase"), the Debtor's mortgage lender with a first deed of trust on her residence in Leesburg, filed a Motion for Relief from the Automatic Stay with respect to the property. Docket No. 116.

20. On March 16, 2015, the Chapter 13 Trustee filed a Motion to Dismiss the Debtor's bankruptcy case for failure to make her plan payments. Docket No. 115.

21. On March 26, 2015, the Debtor filed a Change of Address form with the Court, indicating that she had moved from Leesburg to 5974 Main St. Mount Jackson, VA 22842. Docket No. 119.

22. On April 15, 2015, the Debtor filed an Amended Chapter 13 Plan in which she indicated that it was her intent to surrender the Cornwall Street property in Leesburg. Docket No. 122, ¶ 3(B). She again listed the arrearages on the rental property in Bayse at $17,273.07. *Id*., ¶ 5(A).

23. On April 23, 2015, the Court entered an Order granting JP Morgan Chase's Motion for Relief from the Automatic Stay with respect to the Leesburg property which, as noted, the Debtor indicated her intent to surrender. Docket No. 125.

24. The Court granted the Trustee's Motion to Dismiss the case on June 4, 2015. Docket No. 136.[3]

*D. Case No. 15-51124 (Western District of Virginia).*

25. The Debtor filed a Voluntary Petition under Chapter 13 in the U.S. Bankruptcy Court for the Western District of Virginia, pro se, on November 17, 2015. Case No. 15-51124.

26. The case was dismissed on January 20, 2016, because the Debtor had not complied with the requirement for pre-petition credit counseling. Docket Nos. 31 (Order Denying Debtor's Motion to Waive Credit Counseling), 32 (Order Dismissing Case).

*E. Case No. 16-50200 (Western District of Virginia).*

27. The Debtor filed a Voluntary Petition under Chapter 13 (her third Chapter 13 case) with the U.S. Bankruptcy Court for the Western District of Virginia on March 3, 2016. Case No. 16-50200, Docket No. 1.

28. In this Petition, the Debtor listed her residence as the Cornwall Street address in Leesburg. *Id.*

29. The Debtor filed this petition pro se, but counsel later entered his appearance on her behalf. Docket No. 19.

30. U.S. Bank, N.A. filed a Motion to Confirm Termination or Absence of Stay. Docket No. 16.

31. On May 9, 2016, the Court entered an Order imposing the automatic stay but subject to the conditions that the Debtor remain current on her post-petition mortgage payments for both the Leesburg property and the Bayse property, that the Debtor remain current on her

---

[3] In all, the Debtor spent approximately two years and nine months in this Chapter 13 case – September 7, 2012, to June 4, 2015.

6

Chapter 13 plan payments, and that she achieve confirmation of a plan by July 6, 2016. Docket No. 33.

32. A month later, U.S. Bank filed a Notice of Default with the Court. Docket No. 42.

33. The Debtor's attorney was allowed to withdraw from the case. Docket No. 45.

34. Ms. Coomes, now acting pro se, filed a Response to U.S. Bank's Notice of Default. Docket No. 46.

35. The Court ruled on July 6, 2016, that it would grant relief to U.S. Bank. Docket No. 49.

36. The Debtor filed a Motion to Reconsider and a Supplement to her Motion to Reconsider. Docket Nos. 51, 53.

37. She filed an Adversary Complaint against Middleburg Bank with respect to the Bayse property. Adversary No. 16-05016.

38. Bank of New York Mellon, as successor to JP Morgan Chase, filed a Motion for Relief from the Automatic Stay with respect to the Cornwall Street property in Leesburg. Docket No. 65.

39. The Bankruptcy Court dismissed the Debtor's case on August 3, 2016, thereby rendering Bank of New York Mellon's Motion moot. Docket Nos. 69, 70.

40. The adversary proceeding against Middleburg Bank was dismissed as moot. Adversary No. 16-05016, Docket No. 71.

41. The Debtor appealed the dismissal of her bankruptcy case. Docket No. 73.

42. On June 26, 2017, the District Court affirmed the Order dismissing the Debtor's bankruptcy case. Docket No. 112. *Coomes v. Structured Asset Securities (In re Coomes),* No. 5:16 cv00048, 2017 WL 2799903 (W.D. Va. June 27, 2017).

43.     The Debtor's bankruptcy case was closed on July 31, 2017. Docket No. 113.[4]

*F. Case No. 17-13497-BFK (Eastern District of Virginia) (This Case).*

44.     The Debtor returned to this Court with the filing a Voluntary Petition under Chapter 13 (her fourth), pro se, on October 16, 2017. Docket No. 1.

45.     Counsel for the Debtor entered his appearance in the case on January 16, 2018. Docket No. 36.

46.     The Trustee filed his Motion to Dismiss Case with Prejudice on February 1, 2018. Docket No. 43.

47.     The Debtor listed not only the Cornwall Street property and the Bayse property, which were listed in her previous cases, but two Lots in Bryce Resort as well. Docket No. 38, Schedule A, at 4. The two Bryce Lots are unimproved and do not generate any income.[5]

48.     The Debtor's Amended Chapter 13 Plan, filed on March 28, 2018, states that she now has accrued **$142,960.02** in arrearages on her principal residence, the Cornwall Street property in Leesburg, which she stated will be "taken care of through personal injury proceeds or a loan mod., whichever occurs first." Docket No. 57, at 4, ¶ 6(A).

49.     In her Amended Chapter 13 Plan she listed "$0.00" in arrearages for the two Lots, but she also listed **$76,678.59** in arrearages on the Bayse property. *Id.*

50.     Three features of the Debtor's Amended Plan are notable. First, the Plan proposed to pay to the Chapter 13 Trustee $300.00 per month for 12 months, then $750.00 per month for 18 months and then $1,950.00 per month for 30 months. *Id.* at 1, ¶ 2. The Debtor's net monthly

---

[4] Including the appeal, the Debtor spent sixteen months, from March 2016 to July 2017, in this Chapter 13 case.

[5] It is not clear where the Debtor obtained the funds to purchase the two Lots – perhaps from the rental income from the Bayse property, perhaps from commissions owed to Old Town. It is clear, though, that the Debtor was not paying any of her mortgages throughout this period of time.

8

income, as evidenced by Line 23c of her Schedule J attached to the Amended Plan, indicates that she has $361.08 in net monthly income. *Id.* at 10.

51. Second, the Amended Plan states that the Debtor will attempt to modify her loan on the Cornwall St. property. *Id*. at 5, ¶ 12.

52. Third, the Plan calls for additional amounts to the paid to the Trustee "from sale of Bryce Resort Lots and personal injury lawsuit." *Id.* at 1, ¶ 2 The Debtor testified at the hearing in this case that the Bryce Lots are not currently listed for sale. Further, the personal injury lawsuit, though pending, is not set for a trial.

53. The Debtor testified that the Bayse property has not been regularly rented since 2015. She is, however, attempting to rent the property in 2018, and she has a few weeks currently booked. She testified that in 2017 the property generated approximately $10,000.00 in gross rental income.

54. On May 31, 2018, the Court denied confirmation of the Debtor's Amended Chapter 13 Plan, with the Debtor's consent. Docket No. 77.

G. *Old Town Insurance & Financial Services, Inc. (Case No. 18-11046-BFK).*

55. On March 26, 2018, the Debtor filed a Voluntary Petition under Chapter 11 for Old Town in this Court. Case No. 18-11046-BFK.

56. The Debtor filed the case without an attorney. Docket No. 1. Old Town did not pay the filing fee. Docket No. 3.

57. The case was dismissed on April 4, 2018. Docket No. 9.

58. On April 5, 2018, the Debtor requested an extension of time to secure counsel and to pay the filing fee. Docket No. 11. The Court granted Old Town until May 31st to have counsel

enter his or her appearance and to pay the filing fee. Docket No. 14 (Order Extending Stay of Dismissal).

59. On May 31st, the Debtor requested an additional extension of time, which the Court denied. Docket Nos. 16, 17.

60. The Debtor testified that she is not personally generating any commissions with Old Town because she does not have a license in Virginia. She did testify that Old Town has residual commissions owed on policies that were generated before she surrendered her license. Her husband (who is in his own Chapter 13 case in the Western District of Virginia) may also be generating commissions through Old Town, though the extent of any income from Old Town was not clear to the Court.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District entered on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Under Section 1307(c)(1) of the Code, the Court can convert or dismiss a case, whichever is in the best interests of creditors, for "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1). Upon a dismissal, the Court can impose such conditions as it may deem necessary. *In re Ellsworth*, 455 B.R. 904, 921-22 (9th Cir. B.A.P. 2011); *In re Cruscuolo,* No. 09-14063-BFK, 2014 WL 1910078 (Bankr. E.D. Va. May 13, 2014) (relying on *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), and *In re Mitrano,* 472 B.R. 706 (E.D. Va. 2012)). See also 11 U.S.C. § 349(a) ("*Unless the court, for cause, orders otherwise . . .* nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title . . .") (Emphasis added).

By any measure, the Debtor has been in Chapter 13 for an extraordinary period of time. She filed her first Chapter 13 case with this Court (Case No. 12-15441-BFK) on September 7, 2012. Now, five years and nine months later, and with three additional bankruptcy cases, the Debtor remains in Chapter 13 without a confirmed Plan. When she began her journey in February 2013, she listed the arrearages on her principal residence (the Cornwall Street property) at **$16,064.56** and the arrearages on her rental property in Bayse at **$17,273.07.** Case No. 12-15441-BFK, Docket No. 58, ¶ 5(A). Now, over five years later (and after representing to this Court in her 2012 case that she was going to surrender the Cornwall Street property), the Debtor lists the arrearages on her Cornwall Street property at **$142,960.02** (almost 9 times the originally stated arrearage amount), and on the Bayse rental property at **$76,678.59** (almost 5 times the amount of the originally stated arrearages). Case No. 17-13497-BFK, Docket No. 57, ¶ 6(A). This can hardly be described as progress in her multiple Chapter 13 cases.

With $219,638.61 in combined arrearages on her two properties, the Debtor would need $3,660.64 per month just to pay the arrearages over a 60-month plan. She lists her monthly net income at $361.08 in her Schedule J, roughly one tenth of what would be required to cure the arrearages in Chapter 13. *Id*., Schedule J.

Moreover, the proposed step payments in the Debtor's Amended Plan are unreasonably optimistic – increasing from $300.00 per month for the first 12 months to $750.00 for the next 18 months, and then to $1,950.00 for the remaining 30 months of the Plan. The first increase is 2.5 times the initial plan payment; the second increase is 6.5 times the amount of the initial plan payment. Although the Debtor testified that she is going back to school for a paralegal certificate and that she plans to hire a licensed insurance agent at Old Town, these measures are all speculative in terms of their ability to generate income to fund the Plan in this case.

The Debtor's Amended Plan states that she will fund the plan with the sale of the Bryce Resort Lots and through her personal injury lawsuit. She acknowledged in her testimony, however, that the Bryce Lots have never been listed for sale with a realtor. Further, the Debtor testified that, while she is represented by counsel in her personal injury lawsuit, the lawsuit is not currently scheduled for a trial. A Chapter 13 Plan that depends on the outcome of non-bankruptcy litigation generally is considered to be speculative and not feasible. *In re Milstein*, 2014 WL 3511526, *3 (Bankr. D. Colo. 2014) ("Numerous courts have found that debtors who propose to fund their chapter 13 plans from a hoped for favorable litigation outcome cannot satisfy the feasibility requirement of § 1325(a)(6)"); *In re Jensen*, 425 B.R. 105, 110 (Bankr. S.D. N.Y. 2010) ("A chapter 13 plan cannot be premised on the successful litigation of a claim"); *In re Ewald*, 298 B.R. 76, 82 (Bankr. E.D. Va. 2002).

In sum, the Debtor's income cannot feasibly support the payment of the arrearages on her two properties. She has been in four Chapter 13 cases, spanning almost six years, during which the arrearages on her two properties have grown exponentially. She has not listed the Bryce Lots for sale and her personal injury lawsuit is not set for a trial. There has been unreasonable delay that has prejudiced the creditors in this case. 11 U.S.C. § 1307(c)(1).

Further, a dismissal without prejudice would only invite the Debtor to file a fifth bankruptcy case with the same intractable feasibility problems. The Court finds, therefore, that a dismissal with prejudice for a defined period of time is required by the facts and circumstances of this case.

**Conclusion**

It is therefore **ORDERED**:

1. This bankruptcy case is dismissed with prejudice to a re-filing by the Debtor in any U.S. Bankruptcy Court for a period of <u>180 days</u> from the date of the entry of this Order.

2. The Debtor is advised that she has the right to appeal this Order by filing a Notice of Appeal with the Clerk of this Court within 14 days of the entry of this Order.

3. The Clerk will mail copies of this Order, or will provide cm-ecf notice of the same, to the parties below.

Date: Jul 10 2018

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: July 10, 2018

<u>Copies to</u>:

Elizabeth H. Coomes
210 Cornwall Street NW
Leesburg, VA 20176
*Chapter 13 Debtor*

Nathan A. Fisher
Michael O. Sandler
3977 Chain Bridge Road, #2
Fairfax, VA 22030
*Counsel to Chapter 13 Debtor*

Thomas P. Gorman
300 N. Washington St.
Suite 400
Alexandria, VA 22314
*Chapter 13 Trustee*