**In the**

**United States Bankruptcy Court**

**For the Eastern District of Virginia**

**Alexandria Division**

-------------------------------------

FILED

2018 JUL 23 P 1:48

CLERK
US BANKRUPTCY COURT
ALEXANDRIA DIVISION

In re:  Elizabeth H. Coomes,                :        Case No: 17-13497-BFK
        Debtor                              :        Chapter 13
                                            :

### DEBTOR'S REPLY TO MARYLAND INSURANCE ADMINISTRATION'S OPPOSITION TO MOTION TO ENFORCE AUTOMATIC STAY IN THE MATTER OF *ELIZABETH HARING COOMES V. MARYLAND INSURANCE ADMINISTRATION*

COMES NOW the Debtor in this her reply to the Maryland Insurance Administration's Opposition to Debtor's Motion to Enforce the Automatic Stay in the Matter of *Elizabeth Haring Coomes v. Maryland Insurance Administration*. In support thereof, Debtor states:

1. In its opposition, the Maryland Insurance Administration asserts that they are required by statute to protect consumers and insurers pursuant to 2-108 and 10-126(a). Neither statute requires the Maryland Insurance Administration to protect insurers. Their mandate is to protect the public. Their statement of regulatory authority is very telling in the instant case because the Administration took action against Debtor for the primary purpose of protecting an insurer, not to protect the public. Since the primary purpose of the Maryland Insurance Administration was to protect a Virginia insurer's pecuniary interests, 362(b)(4) is inapplicable.

2. The Maryland Insurance Administration represents it afforded Debtor notice and opportunity for a hearing pursuant to 2-210 through 2-214; 10-126 and that Debtor was afforded Due Process. Nothing could be further from the truth. Debtor's substantive and procedural Due Process rights were violated. The Maryland Insurance Administration failed to serve Debtor and

Process rights were violated. The Maryland Insurance Administration failed to serve Debtor and her former counsel with its Amended Order (the amended administrative charging document). This violated her right to Notice. Debtor objected to the lack of service of process. The Maryland Insurance Administration refused to turn over the investigative records, even after the investigation was concluded. They refused to produce documents responsive to Debtor's discovery. The hearing officer denied Debtor's requests to continue the motions hearing on the Motion for Summary Decision. Debtor had requested the continuance because her former counsel had not prepared for the motions hearing, had not issued any subpoenas and Debtor knew she would be severely prejudiced because of ineffective counsel. The hearing officer denied both of Debtor's motions to continue. This was an abuse of discretion. Debtor's counsel was unable to confront the affiant hearsay witnesses against Debtor because they were not present. He objected. Confrontation is a fundamental Due Process right. Debtor was never charged with a violation of 10-126(a)(11): "has willfully failed to comply with or has willfully violated a proper order, subpoena, or regulation of the Commissioner or the insurance regulatory authority of another state" Pursuant to 2-204(b)(iii), the Maryland Insurance Administration was required to notify Debtor of the grounds upon which its revocation Order was based. They did not. However, one of the affiants insinuated in an unsworn, unreliable affidavit that Debtor had failed to produce the voluntary surrender agreement when Ordered to appear and produce on August 13, 2013. This allegation was totally false and unsubstantiated. It was also incredible. Surely, if Debtor had indeed failed to appear and produce as Ordered, the Maryland Insurance Administration would have issued a Motion to Compel or contempt proceedings. They did not. The only testimony about it was Debtor's uncontroverted sworn affidavit and testimony, in which she categorically denied this allegation. In spite of never having been charged with a

violation of 10-126(a)(11) and there not being any evidence of this violation, Debtor was punished for a violation of 10-126(a)(11). This is an illegal sentence pursuant to Maryland Rule Maryland Rule 4-345(a); Debtor was sentenced for a crime for which she was not indicted. There is no question Debtor's Due Process rights were violated in the absence of notice of this alleged violation. The hearing officer's belief (which she articulated in the revocation Order) that Debtor willfully failed to appear and produce was one of the reasons she imposed the harshest punishment, *viz.* revocation. The Maryland Insurance Administration summarily revoked Debtor's license, depriving her of the three day evidentiary hearing on the merits that had been scheduled. The Maryland Insurance Administration has argued that the two hour motions hearing on their summary disposition motion was an "evidentiary hearing" because Debtor was allowed to testify and present evidence. Summary disposition was not appropriate for many reasons. There were numerous disputes of material fact and questions of intent. Furthermore, since Maryland law expressly criminalizes violations of the Maryland Insurance Article pursuant to 1-301 (a violation is a misdemeanor and carries a criminal penalty), Debtor ought to have been able to present all appropriate evidence in her defense at the scheduled three day evidentiary hearing on the merits, including character witness testimony, fact witnesses, mitigating factors evidence, etc. Deciding the case, a case with no legal precedent, on a motions hearing for summary disposition was analogous to deciding a criminal case at a preliminary hearing. Debtor was given the harshest possible sentence in the absence of the full evidentiary hearing she was entitled to by law. This implicated Debtor's Due Process right to Notice and an Opportunity to be fully heard. Furthermore, the Baltimore Circuit Court excluded exculpatory evidence of another agent proving a voluntary surrender of a Virginia insurance producer license is not an adverse action. The other agent had been charged with murder for hire in 2008 and had

signed a nearly identical Virginia voluntary surrender agreement. The other agent's voluntary surrender was not construed as an adverse administrative action. This evidence was excluded on the erroneous basis that it was not "material."

3. The Maryland Insurance Administration asserts it had authority to revoke Debtor's license for an alleged failure to pay a Virginia insurer on demand in Virginia. They cite the statute 10-126(a)(12), which requires the holder of the license to pay on demand. It is an undisputed fact that the corporation (the holder of the license) owed Anthem the funds in question. Debtor was not the licensee which owed Anthem money. If the Maryland Insurance Administration had authority to try the payment on demand issue which occurred in Virginia and was lawful in Virginia, they lacked police and regulatory authority to charge Debtor with a violation since she was not the holder of the license. Therefore, 362(b)(4) is inapplicable.

4. The intent and purpose of the Maryland pay on demand statute 10-126(a)(12) is to protect insurers, not the public. In point of fact, 10-126(a)(12) reads,

> "The Commissioner may deny a license to an applicant under §§ 2-210 through 2-214 of this article, or suspend, revoke, or refuse to renew or reinstate a license after notice and opportunity for hearing under §§ 2-210 through 2-214 of this article if the applicant or holder of the license has failed or refused to pay over on demand money that belongs to an insurer, insurance producer, or other person entitled to the money."

Historically, insurance agents collected the vast majority of client premiums and then submitted premiums collected to the insurer. Prior to a revision of the Maryland statute, 10-126(a)(12) penalized licensees who failed or refused to pay over on demand money "<u>on hand</u>" that belongs to an insurer, insurance producer, or other person entitled to the money. The legislative intent was to punish licensees who had the funds on hand and withheld the funds from an insurer. Such

was not the case in the instant case. 10-126(a)(12) does not implicate public policy because it is designed to protect insurers' pecuniary interests. Therefore, 362(b)(4) is inapplicable.

5. Anthem's regulatory complaint against Debtor was false, malicious and defamatory. It was designed to put pressure on Debtor's agency to repay Anthem faster. The Virginia Bureau of Insurance acted in essence as Anthem's heavy-handed bill collector. In the 15 months before Debtor voluntarily surrendered her Virginia license, the Virginia Bureau of Insurance never brought administrative charges against Debtor. If the public had been at risk, the Virginia regulators would have brought administrative charges against the Debtor, but they did not.

6. The Maryland Insurance Administration also revoked Debtor's license under 10-126(f) for allegedly failing to report an "adverse administrative action" (the voluntary surrender of her Virginia license in the absence of administrative charges, findings of fact and conclusions of law, and the absence of an Order or Final Order). 10-126(f) does not require a licensee to report an adverse administrative action unless and until there has been a final disposition. 10-126(f) reads,

> The Commissioner may deny a license to an applicant under §§ 2-210 through 2-214 of this article, or suspend, revoke, or refuse to renew or reinstate a license after notice and opportunity for hearing under §§ 2-210 through 2-214 of this article if (f)(1) Within 30 days after the final disposition of the matter, an insurance producer shall report to the Commissioner any adverse administrative action taken against the insurance producer:
>
> (i) in another jurisdiction; or
>
> (ii) by another governmental unit in this State.
>
> (2) The report shall include a copy of the order, consent order, and any other relevant legal documents."

It is well established under Maryland law that a settlement agreement is not considered final, absent a Consent Order and Final Order. Debtor was under no obligation to report the voluntary surrender if it was an adverse administrative action, but had not reached final disposition. The

Maryland Insurance Administration never found it was a "final disposition." Therefore, the Maryland Insurance Administration lacked police and regulatory power to revoke Debtor's license for allegedly failing to report a so-called adverse administration action that had not resulted in a final disposition and was not reportable pursuant to Maryland law. Therefore, 362(b)(4) is inapplicable.

7. The Maryland Insurance Administration alleges that Debtor mishandled more than $20,000 that belonged to Anthem, an insurer, "Ms. Coomes deposited the two checks into her business operating account." The Administration deliberately misstates the facts and evidence. It was uncertain who deposited the Anthem checks. Debtor testified that she may have deposited one of the checks, but she was unsure. At worst, Debtor may have inadvertently deposited one of the checks from Anthem into the agency operating account, believing it to be intended for the agency. The Maryland Insurance Administration also falsely alleges, "She then used the proceeds from the checks to pay for, among other things, a retiring employee's **personal** bank loan." However, the facts and evidence in this case are that some of the funds in question were spent on <u>ordinary business expenses</u>. The retiring agent's bank loan was a **business** line of credit at a local financial institution used for ordinary **business** expenses. It was not personal in nature. Debtor did not engage in misconduct. The preliminary inquiry in VA (an investigation only) was not dispositive.

8. It appears the Maryland Insurance Administration is a creditor in virtue of the $1,250 administrative penalty it assessed against the Debtor. Debtor shall amend her creditor list. This penalty is included in Debtor's Maryland appeal. While the Maryland Insurance Administration has not made any efforts, to date, to collect the penalty, they could take collection action against Debtor. The Commissioner may bring a civil action in a court of competent jurisdiction to

collect the administrative penalty, including expenses and litigation costs, reasonable attorney's fees, and interest. This would interfere with Debtor's reorganization. The fact that the respondent is also a creditor with a pecuniary interest actually strengthens Debtor's argument that the subject of her Maryland appeal, her interest in recovering her professional license and her potential claim against the Maryland Insurance Administration are assets of the bankruptcy estate and that 362(b)(4) is inapplicable. Moreover, the automatic stay precludes not only creditor actions which impact the bankruptcy estate. The automatic stay is broad; it also extends to third party actions which threaten the bankruptcy estate. Interference with the estate is necessary for an act to be subject to the automatic stay. *In re Printing Dept., Inc.*, 20 B.R. 677 (Bankr. E.D. Va. 1981). The stay protects actions involving the Debtor or property of the estate. *Nicholls v. Zurich American Ins. Group*, 244 F. Supp. 2d 1144 (D. Colo. 2003); *In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111 (Bankr. D. N.J. 2003). The automatic stay is applicable whether the action involves the debtor or property or the estate.

9. The Maryland Insurance Administration brings up Debtor's prior Chapter 13 bankruptcy in the Western District. Debtor made a good faith effort to reorganize. Unfortunately she experienced serious unforeseen post-petition life threatening medical problems and other serious post-petition problems, which derailed her 2016 reorganization. The Maryland Insurance Administration suggests Debtor's Western District bankruptcy filing was an effort to avoid an <u>impending</u> government action. This is absurd. By respondent's own admission, Debtor filed for bankruptcy protection more than 14 months in the Western District after final regulatory action was taken against her. Moreover, there were numerous good faith reasons for Debtor's bankruptcy filings. Debtor shall supply the verbatim transcripts of the Western District Case proceedings to the Court.

10. Next, the Maryland Insurance Administration points out that Debtor did not include her revoked Maryland license as an asset of her bankruptcy estate in question number 27 of Official Form 106Sum. Debtor would note that Official Form 106Sum is a two page form with only 9 questions. Debtor's answer to question 27 of Schedule A/B was correct; she did not list her license because she does not currently possess a license since it was revoked. The Maryland Insurance Administration improperly conflates possession of an active license with Debtor's legal and equitable interest in the recovery of her professional license, the subject matter of her Maryland appeal, which is an asset of her bankruptcy estate.

The United States Supreme Court has held that held that the reorganization estate of the debtor includes property of the debtor which had been seized by a government unit prior to filing of petition for reorganization. The inclusive scope of the bankruptcy estate reflects the desire of Congress to facilitate the financial rehabilitation of debtors. As the Supreme Court observed in *Whiting Pools,* Congress broadly defined the property of the estate in § 541(a) (1) to include all tangible and intangible property interests of the debtor. *See* 462 U.S. at 204-05, 103 S. Ct. 2309 and n.9 (quoting legislative history); *see also Black's Law Dictionary* 1234 (7th ed.1999) (defining "property of the estate" to include "the debtor's tangible and intangible property interests (including both legal and equitable interests)"). Indeed, the *Whiting Pools* Court expressly stated that "interests in [repossessed] property that could have been exercised

by the debtor-in this case, the rights to notice and the surplus from a tax sale-are already part of the estate by virtue of § 541(a)(1)." 462 U.S. at 207 n. 15, 103 S.Ct. 2309 (internal citation omitted). *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203-04, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Similarly, the 4th Circuit had held interests that Chapter 13 debtor retained under Virginia law in automobile that was lawfully repossessed prepetition, including statutory right of redemption, were "legal or equitable interests" included in estate property. *In re Marlene MOFFETT* 356 F.3d 518 United States Court of Appeals, 4th Cir. (2004). Therefore, the fact that Debtor's license had already been revoked at the time of her filing does not alter the fact that her legal and equitable interest in recovering her license and her potential claim against the Maryland Insurance Administration are assets of her bankruptcy estate.

11. Respondent argues "there is no battle for 'control' over Debtor's revoked insurance producer license within the meaning of 362(a)(3) as it is not property of the bankruptcy estate." Debtor disagrees. Debtor argues that her legal and equitable interest in recovering her license, the subject matter of her appeal, and her potential claim against the Maryland Insurance Administration are assets of her bankruptcy estate. The Maryland appeal therefore represents a battle for control of Debtor's license. "The word "obtain" in the context of 362(a)(3) requires not only the loss of the interest by the estate, but also the acquisition of that interest by the affected entity, and an entity does not violate this provision of the stay by taking action to force the loss of a property interest by the estate, where the entity is not seeking to obtain possession of

that interest, the view has also been taken that this provision does not require that the creditor or other entity derive a benefit from its act to obtain possession of property of the estate or of property from the estate. There is also authority that it is sufficient if the action places estate property at risk." Quoting American Jurisprudence, Second Edition, A Modern Comprehensive Text Statement of American Law, State and Federal, Vol. 9B, Bankruptcy, p. 195; See *In re Kish*, 41 B.R. 620 (Bankr. E.D. Mich. 1984); *Matter of Lee*, 35 B.R. 452 (Bankr. N.D. Ga. 1983); *In re Lickman*, 297 B.R. 162 (Bankr. M.D. Fla. 2003). There is no question dismissal of Debtor's appeal places the estate property at risk because it will divert her resources and preclude a successful reorganization. That reason alone implicates the stay.

12. The Maryland Insurance Administration represents, "Contrary to Ms. Coomes's assertion, there is precedent for the Maryland Court of Appeals' interpretation of 362(b)(4)." To the contrary, there is no controlling legal authority on the question of whether an individual debtor who is appealing a final regulatory agency action and whose bankruptcy estate includes the subject matter of the appeal is protected by the automatic stay of bankruptcy. All of the cases cited by the respondent are examples of ongoing, non-final regulatory actions. Talk is cheap; Debtor challenges the respondent to produce a single case of 362(b)(4) applying to an appeal of a final regulatory action. Respondent cites *U.S. Intern. Trade Com'n v. Jaffe*, 433 Br. 538 (Bankr.E.D.Va. 2010), a non-final regulatory case to prevent <u>continued ongoing</u> importation of devices that allegedly infringed their patents. Respondent also cites *Safety Kleen*, In *Safety-Kleen v. Wyche*, the Debtor filed an adversary proceeding against the South Carolina Department of Health and Environmental Control (DHEC) in an effort to prevent the agency from closing Safety–Kleen's Pinewood facility. There is no question *Safety-Kleen* was an enforcement action

within the meaning of 362(b)(4). It was an active, ongoing enforcement action and it implicated public policy. Respondent also cites McMullen, 386 F.3d at 324-25; the exception 362(b)(4),

> "discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading **impending** governmental efforts to invoke the governmental police powers to enjoin or deter **ongoing** debtor conduct which would seriously threaten the public safety and welfare." (emphasis added)

The operative words in *McMullen* are impending and ongoing. Debtor's case is inapposite since the government action is final, there is no impending government actions. And since her license is revoked, there is no ongoing debtor conduct that could possibly threaten public safety and welfare while she perfects her appeal. Respondent has failed to demonstrate how the status quo with respect to Debtor's perfection of her appeal prevents or stops violations of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws.

Debtor's case is highly distinguishable because it is an appeal of a final regulatory action. It is absurd to maintain that a Debtor's appeal of a final regulatory action is an enforcement action to protect the public within the meaning of 362(b)(4). Debtor brought the appeal. The case is styled *Elizabeth Haring Coomes v. Maryland Insurance Administration*. The appeal does not change the status quo. The posture of this case is not an enforcement action. If it were an enforcement action at this stage, it would be entitled *Maryland Insurance Administration v. Elizabeth Haring Coomes*.

13. The Maryland Insurance Administration asserts that the United States Supreme Court decision in *MCorp* supports their position. To the contrary, the Supreme Court held, "If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to

exercise its concurrent jurisdiction under 28 U.S.C. § 1334(b). See *Board of Governors of the Fed. Res. Sys. V. MCORP Fin. Inc.*, 502 U.S. 32, 112 S. Ct. 459, 116 L. Ed. 2d 358, 25 C.B.C.2d 849 (1991).

14. "Exceptions to the stay should be read narrowly to secure the broad grant of relief to the debtor, which is intended under the Bankruptcy Code, unless a broader interpretation must have been contemplated by Congress when it enacted the specific exception." Quoting American Jurisprudence, Second Edition, A Modern Comprehensive Text Statement of American Law, State and Federal, Vol. 9B, Bankruptcy, p. 217; See *In re Stringer*, 847 F.2d 549 (9th Cir. 1988); *In re Prudential Lines, Inc.*, 69 B.R. 439 (Bankr. S.D.N.Y. 1987); *In re Lori*, 241 B.R. 353 (Bankr. M.D. Pa. 1999). Congress did not intend a broader interpretation. The legislative intent supplied by Debtor expressly indicates 362(b)(4) only applies to ongoing, non-final regulatory actions. Therefore, 362(b)(4) is inapplicable.

15. The exception 362(b)(4) is also inapplicable in the instant case because the respondent's novel construction of the law is one of first impression and selectively enforced, rather than one of "general applicability." *In re Wengert Transp.*, Inc. 59 B.R. 226 (Bankr. N.D. Iowa 1986); *In re Coporacion de Servicio Medicos Hospitalarios de Fajardo*, 805 F.2d 440 (1st Cir. 1986). *Wengert* also held that 362(b)(4) is inapplicable when the law in question is in conflict with the policies of the Bankruptcy Code. The Maryland Insurance Administration has been in existence since 1872 and has never asserted original jurisdiction over a licensee's actions that were legal in another state and tried the licensee *de novo* in Maryland under Maryland law as they did to Debtor, trying her for a violation of 10-126(a)(12) when the alleged violation occurred in Virginia and Debtor was not the licensee which owed Anthem the funds. Likewise, the Maryland Insurance Administration has never construed the voluntary surrender of a license to

be an adverse administrative action in the absence of administrative charges, findings of fact and conclusions of law and the absence of an Order and Final Order. The Maryland Insurance Administration has never disciplined an agent for failure to report an adverse administrative action that had not reached a final disposition. The novel case against Debtor is one of particular applicability. Therefore, 362(b)(4) is inapplicable since the purported regulatory law is not one of "general applicability."

16. The Maryland Insurance Administration had no enforcement action rights against debtor at time Debtor's petition was filed, making 362(b)(4) inapplicable. Debtor's appeal post-filing was therefore subject to the stay,

> The section 362(b)(4) governmental activities exemption has been interpreted as being limited solely to the "enforcement" of police or regulatory law. Barber, Inc. v. NLRB, 9 B.C.D. 188 (N.D.Tex.1981). <u>This literal construction has expressly declined to classify as exempt, proceedings or events which occur prior to accrual of a municipal right of action. There must exist a derogation of the local law at the time of a bankrupt's filing before a municipality can proceed to enforce its zoning statutes in the face of the stay</u>. In re Cousins Rest. Inc., 11 B.R. 521, 8 B.C.D. 15 (Bkrtcy.W.D.N.Y.1981). In the case at bar only two months on the abandonment period had run by the date of the debtor's filing. At that point, the village had no enforceable rights against the debtor. The running of the abandonment period for four more months was the necessary contingent event to the creation of such a right. Accordingly, the post filing administrative reclassification is not an act of enforcement, and is subject to the stay. (emphasis added) *Matter of IDh Realty, Inc.*, 16 B.R. 55 (Bankr. E.D.N.Y. 1981).

17. Since Debtor is appealing a final regulatory action which revoked her professional license, 362(b)(4) is inapplicable because there is no urgent need to protect the public,

> "Case law under the new code has further narrowed the (b) (4) exemption to only those exercises of the police powers which are "urgently" needed to protect the public health and welfare. King Memorial Hospital Inc. v. Dept. of Health and Services, State of Florida, 4 B.R. 704, 6 B.C.D. 634 (Bkrtcy.1980). Under this interpretation hospital licensing regulation was deemed not to involve sufficient urgency. In light of the conceded facts that IDH had been operating on the premises in a fast food capacity since 1969, and that a similar fast food establishment is situated across the street from the premises, there is little merit to the argument that the running of the abandonment period, and accompanying enforcement of the village zoning statute will work to protect the

> public health and welfare from urgent harm. This is precisely the sort of government activity which Congress intended to stay, pending an application to this court to balance the parties competing interests. *Matter of IDh Realty*, Inc., 16 B.R. 55 (Bankr. E.D.N.Y. 1981).

Since Debtor's license has been revoked and the status quo continues during her appeal, there is no merit to respondent's argument that dismissal of Debtor's appeal will protect the public. Therefore, 362(b)(4) is inapplicable.

18. Government actions brought for an "ulterior motive" in bad faith are not excepted from the stay because they do not constitute a valid exercise of the government's police or regulatory power. See *In re Beker Industries Corp.*, 57 B.R. 611 (Bankr. S.D.N.Y. 1986). The Maryland Insurance Administration's novel case against Debtor was made in bad faith. Counsel for the Maryland Insurance Administration admitted in writing the voluntary surrender of a license is not an adverse action, yet charged her with a violation of 10-126(f) anyhow. Maryland Insurance Administration investigative staff admitted they lacked jurisdiction over the Anthem check issue, including the repayment, yet charged her anyhow.

19. The Maryland Insurance Administration contends that *St. Croix Condo* is inapplicable because it does not involve a regulatory action. St. Croix merely stands for the proposition that an appeal is subject to the automatic stay because it is a continuation of an action or proceeding originally brought against the debtor. Whether an exception to the stay applies is a separate question.

20. The Maryland Insurance Administration asserts that Debtor's motion is defective on the grounds that *St. Croix* held "whether a case is subject to the automatic stay must be determined at its inception" and "such a determination was not made at the inception of this case and Ms. Coomes has not established grounds for application of the automatic stay in the present matter."

Respondent misunderstands *St. Croix* – the decision means whether the stay applies to an appeal is determined by looking at stance of the underlying case at its inception. In other words, was the original action on appeal originally brought against the debtor? This determination does not have to be made at the outset of a bankruptcy case. If that were the case, Debtors would have no redress if they could not foresee future automatic stay violations and obtain determinations at the outset of their bankruptcy cases. This reading is absurd.

21. The Maryland Insurance Administration argues that Debtor's contention that her interest in recovering her professional license is part of her bankruptcy estate is undermined by the fact that the Trustee declined to administer her appeal of the revocation of her Maryland insurance producer license. Debtor had experienced Maryland appellate counsel representing her until recently. Furthermore, the Trustee is not licensed to practice law in Maryland. Therefore, he could not possibly administer Debtor's Maryland appeal.

22. The Maryland Insurance Administration asserts that there is no basis in law or fact to support Debtor's potential claim against the Maryland Insurance Administration which is an asset of her bankruptcy estate. This is erroneous. The Maryland Insurance Administration had no basis to charge Debtor in Maryland. Counsel for the Maryland Insurance Administration admitted in writing the voluntary surrender of a license is not an adverse action, yet charged her with a violation of 10-126(f) anyhow. Maryland Insurance Administration investigative staff admitted they lacked jurisdiction over the Anthem check issue, including the repayment, yet charged her anyhow. In over 150 years, the Maryland Insurance Administration has never asserted original jurisdiction over actions of an agent in another state which were legal in the other state. The prosecution of Debtor is a damning case of selective enforcement and/or malicious prosecution.

Debtor raised concerns about the apparent disparate treatment from the outset in her December 4, 2013 request for a hearing,

> "I have serious concerns that I am the victim of a witch hunt that involves obvious discrimination...I also got accused of failing to report a "final administrative action" even though Maryland does not even consider a voluntary surrender to be an administrative action. I believe this is discrimination. The law as well as insurance regulations should be applied equally and fairly to all agents. Both investigations have caused be severe mental anguish and stress as well as substantial monetary damages. Lastly, I wish to remind you that Anthem's regulatory complaint against me upon which you base your attempt to revoke my license was patently false. Moreover, the matter was not adjudicated. I have grave concerns that your Order, which parrots the false and defamatory Anthem complaint as though it is fact, amounts to libel, slander, defamation of character and other legally actionable injuries. Should it become a public record, I will suffer irreparable harm and will have no choice but to seek damages from all responsible parties."

Moreover, the Maryland Insurance Administration has deliberately made many defamatory statements against Debtor in its pleadings, including most recently in their opposition to Debtor's motion wherein they falsely asserted Debtor deposited both Anthem checks, engaged in dishonest, fraudulent misconduct, and paid a personal loan of a former employee. The Maryland Insurance Administration has destroyed Debtor's personal and professional reputation, caused her substantial economic damages, severe mental anguish and profound emotional distress. Respondent's prosecution of Debtor was unlawful.

WHEREFORE, Debtor prays this Court will find the automatic stay is applicable in the matter of *Elizabeth Haring Coomes v. Maryland Insurance Administration*, Order her appeal to be reinstated and such other relief as appropriate.

RESPECTFULLY SUBMITTED,

Elizabeth H. Coomes

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of July 2018 I caused a copy of the foregoing paper to be served, by first class mail, postage prepaid upon:

Ioannis Laskaris
Assistant Attorney General
Counsel for the Maryland Insurance Administration
200 St. Paul Place, Suite 2700
Baltimore, MD 21202


Thomas Gorman
Chapter 13 Trustee
300 N. Washington St.
Suite 400
Alexandria, VA 22314
Phone: (703) 836-2226

Elizabeth H. Coomes

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
_____Alexandria_____ Division

In re: **Elizabeth H. Coomes**         Case No. **17-13497-BFK**
            Debtor(s)                  Chapter **13**

Plaintiff(s)                  Adversary Proceeding No.

v.

Defendant(s)

CERTIFICATION UNDER LOCAL BANKRUPTCY RULE 2090-1

Document Title: **Debtor's Reply to MD Insurance Administration's Reply**
Date Document Filed: **7/23/18**
Docket Entry No.

I declare under penalty of perjury that (Check one box):

☐ No attorney has prepared or assisted in the preparation of this document.

☒ The following attorney prepared or assisted in the preparation of this document.

**Nathan Fisher, Esq.**
(Name of Attorney)

**Fairfax, VA**
(Address of Attorney)

**703-691-1642**
(Telephone Number of Attorney)

**Elizabeth H. Coomes**
Name of Pro Se Party (Print or Type)        Name of Pro Se Party (Print or Type)

**[signature] Elizabeth Coomes**
Signature of Pro Se Party                   Signature of Pro Se Party

Executed on: **7/23/18** (Date)

[2090edva ver. 09/17]